# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THE FIRST NATIONAL BANK OF ELY, | |
| Plaintiff, | 3:11-cv-00859-RCJ-WGC |
| v. | |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, ABA INSURANCE SERVICES, DOES I through X, inclusive, | **ORDER** |
| Defendants. | |

This case involves contractual, statutory, and tort claims by an insured bank against its insurer. Currently before the Court is a motion to dismiss for failure to state a claim, and in the alternative, to strike certain relief requested (#23) and a motion to strike new defenses and for leave to file second amended complaint (#30).

## BACKGROUND

First National Bank of Ely ("First National") is a nationally chartered bank operating in the state of Nevada. (First Am. Compl. (#22) at 1). First National obtained two types of insurance coverage through Defendant Progressive Casualty Insurance Company ("Progressive"). (*Id.* at 4-5). The first was a fidelity bond policy (the "Bond") with policy number 7107559-05. (*Id.* at 4). The second was a directors and officers policy of insurance (the "D&O Policy") with policy number 4549014-05. (*Id.* at 5). ABA Insurance Services ("ABAIS") served as Progressive's agent for claim investigation and administration of the Bond and D&O Policy. (*Id.* at 2).

On or about November 23, 2009, First National became aware of a loss caused by Mr. Stephen Marich, an employee and officer of First National, who embezzled money belonging

to depositors of First National and/or First National itself. (*Id.* at 5). Marich later pled guilty to embezzlement and was sentenced to imprisonment and ordered to pay restitution of $5,897,234.98. (*Id.* at 6; *United States v. Marich*, No. 2:11-cr-43-KJD-RJJ, Doc. ##6, 14). First National then timely notified Progressive and ABAIS of the loss caused by Marich's actions, for which First National was legally responsible, and requested coverage and indemnification for the loss. (First Am. Compl. (#22) at 5-7).

Otto Elkins, a claim investigator and claim adjuster for ABAIS, commenced an investigation of First National's claim for benefits. (*Id.* at 7). On September 28, 2010, Elkins told John Gianoli, President of First National, and Joy Graber, prior counsel for the bank, that benefits would not be payable on the D&O Policy until a lawsuit was filed against the bank as a result of Marich's conduct. (*Id.* at 11-12). Elkins then repeated this information to Gianoli in September 2010 and to Graber on May 13, 2010 and in May 2011. (*Id.* at 12). This information was allegedly false and was made for the purported purpose of refusing to pay First National for its loss under the Bond and D&O Policy so that ABAIS and Progressive could profit thereby. (*Id.* at 8).

After investigating the claim, Progressive paid First National only $1,547,318.08 of the $1,675,000 available under the Bond. (*Id.* at 8; April 4, 2011 Letter (#30-15) at 5). Elkins noted in a letter dated April 4, 2011 that the full value of benefits under the Bond were not paid because of a material misrepresentation made by the bank and because a bank employee discovered Marich's suspicious activities but did nothing about them, and therefore the losses suffered after this discovery were not covered by the bond. (First Am. Compl. (#22) at 8; April 4, 2011 Letter (#30-15) at 6-8). Progressive also did not pay First National any of the benefits available under the D&O Policy because, as stated in a letter from Elkins dated May 31, 2011, no suits had been filed or demands made against the bank. (First Am. Compl. (#22) at 8; May 31, 2011 Letter (#30-17) at 2-4). Defendants reserved all rights to assert additional defenses in the future in both letters. (April 4, 2011 Letter (#30-15) at 8; May 31, 2011 Letter (#30-17) at 4).

First National filed a complaint in Nevada state court on October 25, 2011 against

Progressive, ABAIS, and American Bankers Association Insurance Company (Progressive's reinsurer). (Compl. (#1-4) at 6-7). The complaint was then removed to this Court by Progressive and ABAIS on November 28, 2011. (Pet. for Removal (#1)).

First National then filed a first amended complaint on February 17, 2012 against only Progressive and ABAIS (collectively "Defendants"). (First Am. Compl. (#22) at 1). The first amended complaint contains five causes of action, including: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of the Nevada Unfair Claims Settlement Practices Act; (4) fraud and concealment; and (5) negligence. (*Id.* at 9-17).

On March 14, 2012, Progressive filed a motion to dismiss, and in the alternative, a motion to strike certain relief requested. (Mot. to Dismiss & Strike (#23)). Specifically, Progressive seeks to dismiss the first amended complaint for failure to state a claim, and in the alternative, strike First National's request for punitive damages, claiming First National has failed to plead facts showing Progressive acted with oppression, malice, or fraud. (*Id.* at 2, 15-16).

On July 2, 2012, First National filed a motion to strike new defenses asserted by Progressive and for leave to file a second amended complaint. (Mot. to Strike & Amend (#30)). First National claims Progressive is asserting new defenses as to why coverage under the insurance contracts was denied which were not asserted in its denial letters and that these new defenses should be stricken. (*Id.* at 10-15). First National also seeks leave to file a second amended complaint, asserting that after filing the first amended complaint it became aware that a claim was asserted by shareholders in a derivative capacity on behalf of First National against the bank's president, John Gianoli. (*Id.* at 15-16).

**MOTION TO DISMISS AND TO STRIKE (#23)**

**A.   Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.

3

1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " nor will " 'naked assertions' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). All well-pleaded factual allegations will be accepted as true and all reasonable inferences that may be drawn from the allegations must be construed in the light most favorable to the nonmoving party. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should freely give leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.     Discussion**

    **1.     Breach of Contract**

In the first cause of action, First National claims Progressive breached the Bond and D&O Policy contracts by failing to interpret the Bond and D&O Policy agreements broadly, by failing to construe these contracts fairly, and by delaying and refusing to pay First National's claim. (First Am. Compl. at 9). To succeed on a breach of contract claim, the plaintiff must demonstrate: (1) formation of a valid contract; (2) breach by the defendant; and (3) damages

resulting from the breach.  *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)).

As for the Bond, First National has alleged that a valid contractual agreement existed. (First Am. Compl. (#22) at 9).  The first amended complaint states that Progressive breached the Bond agreement by not paying the full amount due under the Bond. (*Id.*).  First National has also alleged that it was damaged by the breach because it was not compensated for its loss to the extent required by the Bond. (*Id.*).  Progressive has not shown that it was legally justified in denying the full amount available under the Bond in its motion to dismiss.  First National has accordingly stated a claim for breach of the Bond agreement.

However, First National has failed to state a claim for breach of the D&O Policy. Although a contractual relationship did exist between the parties in the form of the D&O Policy agreement, First National has failed to properly plead facts indicating that Progressive breached the agreement.  The D&O Policy states that Progressive is required to reimburse First National for "Loss resulting from Claims first made during the Policy Period or the Discovery Period against the Insured Persons for which the Company has agreed to or is legally permitted or required by law to indemnify the Insured Persons for Wrongful Acts." (D&O Policy (#23-3) at 5).[1]  The D&O Policy also requires Progressive to reimburse First National for "Loss resulting from Claims first made during the Policy Period or the Discovery Period against the Company for which the Company is legally obligated to pay for Wrongful Acts." (*Id.*).  Both of these provisions provide that Progressive is not required to reimburse

---

[1] The first amended complaint specifically refers to the D&O Policy and the parties have requested that the Court take judicial notice of this agreement. (First Am. Compl. (#22) at 9; Mot. to Dismiss & Strike (#23) at 4; Mot. to Strike & Amend (#30) at 2). Accordingly, the Court may consider the D&O Policy on a motion to dismiss without converting the motion into a motion for summary judgment. *See In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) ("Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (internal quotation marks and brackets omitted); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) ("[D]ocuments whose contents are alleged in a complaint . . . , but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

5

First National unless First National first either indemnifies an insured person or the company was legally obligated to pay another party for a wrongful act. *See also Pan Pac. Retail Properties, Inc., v. Gulf Ins. Co.*, 471 F.3d 961, 972 (9th Cir. 2006) (there is no company indemnification coverage where a company has not paid indemnity to its directors or officers). The first amended complaint nowhere states that First National indemnified Marich or any other individual for Marich's wrongful conduct. The first amended complaint also fails to state that First National paid out funds it was legally obligated to pay due to the wrongful acts. Based on the facts alleged, it appears First National seeks to simply be compensated for the losses it suffered through Marich's embezzlement rather than be reimbursed for money paid or indemnification made. The D&O Policy however does not cover any loss First National suffers, but rather explicitly only covers indemnification and company liability. (D&O Policy (#23-3) at 5). As First National has failed to allege that it indemnified an insured person for a wrongful act or that it was legally obligated to pay funds due to a wrongful act, First National has failed to sufficiently allege a breach of the D&O Policy by Progressive.

Furthermore, Progressive did not breach the D&O Policy because the policy does not compensate First National for the loss suffered from fraudulent and criminal conduct. The Fraud/Violation of Law Exclusion contained in the D&O Policy states "[t]he Insurer shall not be liable to make any payment for Loss, other than Defense Costs, in connection with any Claim arising out of or in any way involving any fraudulent, dishonest or criminal act . . . by the Insured, provided a final judgment or final adjudication establishes such fraudulent, dishonest, or criminal act." (*Id.* at 12). "Insured" is defined in the D&O Policy as either First National or an "Insured Person," meaning any past, present or future director, officer, or employee of the company. (*Id.* at 8).

First National admits in its first amended complaint that Marich committed a fraudulent, dishonest, and criminal act. (First Am. Compl. (#22) at 6). The first amended complaint also alleges that Marich pled guilty and was sentenced for a criminal act which involved fraud and dishonesty, and thus a final judgment was issued establishing the fraudulent, dishonest, and criminal act. (*Id.*; *see also United States v. Marich*, No. 2:11-cr-43-KJD-RJJ, Doc. ##6, 14).

6

First National also does not claim it defended Marich and incurred costs in doing so, but rather seeks to be compensated for the loss itself. Because the loss resulted from a fraudulent, dishonest, and criminal act, Progressive is not responsible for compensating First National for the loss under the terms of the D&O Policy and accordingly did not breach the policy by failing to do so.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

First National alleges in the second cause of action that Progressive breached the covenant of good faith and fair dealing. (First Am. Compl. (#22) at 9-10). Nevada law holds that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *A.C. Shaw Constr. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205). To succeed on a cause of action for breach of the covenant of good faith and fair dealing, a plaintiff must show: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

First National has alleged that Progressive and First National were parties to an agreement—the Bond and D&O Policy—and that Progressive owed First National a duty of good faith. (First Am. Compl. (#22) at 4-5, 9). First National has also alleged that Progressive breached that duty by failing to pay the Bond and D&O Policy claim, failing to conduct a prompt and objective evaluation of the claim, and by misrepresenting facts and unreasonably interpreting the insurance contracts. (*Id.* at 9-10). Progressive failed to pay the full amount due under the Bond—which covered the loss suffered—and failed to conduct a prompt investigation of the claim, thereby denying First National its justifiable expectations in being compensated to the full extent allowed by the agreement. Although Progressive did not have a duty to pay under the D&O Policy, it did have a responsibility to conduct a prompt evaluation of the claim and to not misrepresent the terms of the policy to First National. As First National has alleged that Progressive failed to pay the full amount owed under the Bond, unreasonably

delayed and misrepresented the nature of the insurance contracts in a manner that was unfaithful to the purpose of the contracts, and denied First National its justified expectation in prompt acceptance and payment on the claims, First National has adequately stated a claim for breach of the covenant of good faith and fair dealing.

### 3.     Breach of the Nevada Fair Claims Settlement Practices Act

In the third cause of action, First National asserts that Progressive violated the Nevada Unfair Claims Settlement Practice Act by: (1) misrepresenting the true nature of the benefits of the insurance contracts; (2) failing to engage in prompt and fair handling of the claims; (3) failing to implement reasonable standards for the prompt investigation and processing of claims; (4) failing to conduct a prompt, fair, and thorough investigation of the claims; and (5) failing to promptly effectuate a fair and equitable settlement of the claims. (First Am. Compl. (#22) at 11). The purpose of NRS §§ 686A.010 to 686A.310, inclusive, is to regulate the business practices of insurance. NEV. REV. STAT. § 686A.010. NRS § 686A.310(1) includes sixteen subsections, each defining an activity to be an unfair insurance practice. A private right of action exists to sue for damages suffered from a violation of any one of these sixteen subsections. NEV. REV. STAT. § 686A.310(2).

Subsection (1)(a) makes it a violation to "[m]isrepresent[ ] to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue." NEV. REV. STAT. § 686A.310(1)(a). First National has alleged that Elkins of ABAIS informed Gianoli and Graber of First National on September 28, 2010 that benefits would not be paid under the D&O Policy unless a lawsuit was filed against the bank as a result of Marich's wrongful conduct. (First Am. Compl. (#22) at 11-12). Elkins again made these same representations to Graber on May 13, 2010 and in May 2011, and to Gianoli again sometime in September 2010. (*Id.* at 12). First National alleges that these statements were false because the D&O Policy defines a claim as "a written or oral demand for monetary damages or non-monetary relief" in addition to a civil or criminal proceeding. (D&O Policy (#23-3) at 7). Progressive argues that even if it misrepresented the D&O Policy on these earlier dates, that in the May 31, 2011 letter to First National Elkins properly stated that a written or oral demand for

monetary damages or non-monetary relief constitutes a claim, and therefore Progressive did not misrepresent the terms of the policy. (Mot. to Dismiss & Strike (#23) at 12). However, the fact that Progressive correctly stated the terms of the Policy in May 2011 does not change the fact that Progressive may have misstated the terms of the policy on numerous other occasions before it was corrected in the letter. Accordingly, First National has stated a claim for relief under NRS § 686A.310(1)(a).

Subsections (1)(b)-1(e) make it a violation to fail to act reasonably promptly upon communications with respect to claims, fail to implement reasonable standards for the prompt investigation of claims, fail to affirm or deny coverage within a reasonable time after the proof of loss requirements have been submitted, and to fail to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear. NEV. REV. STAT. §§ 686A.310(1)(b)-(e). The first amended complaint alleges that First National became aware of the loss in November 23, 2009 and timely notified Progressive of the loss. (First Am. Compl. (#22) at 5). First National was never instructed by Progressive that its claims under the Bond or D&O Policy were incomplete or that additional information was required. (*Id.* at 11). Yet despite allegedly having all the relevant information, Progressive did not affirm or deny coverage and provide its reasons for doing so until April 4, 2011 for the Bond and until May 31, 2011 for the D&O Policy. (*Id.* at 8). As First National has alleged that it took Progressive nearly a year and a half to fully address its claims, First National has stated a claim for relief under NRS §§ 686A.310(1)(b)-(e).

First National also argues that Progressive violated certain provisions of Chapter 686A of the Nevada Administrative Code. However, the Nevada Supreme Court has held that while failure to pursue an administrative violation with Nevada Department of Insurance ("NDOI") does not preclude subject matter jurisdiction in the district courts, it does render the claim unripe and therefore "nonjusticiable." *Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 993-94 (Nev. 2007). In *Thorpe*, the Nevada Supreme Court also clearly held that "the NDOI has exclusive original jurisdiction over . . . any matter in which . . . a party seeks to ensure compliance with the Insurance Code." *Id.* at 994. Because the NDOI has exclusive jurisdiction over Nevada

9

Insurance Code regulatory and administrative claims and First National has not pled that it exhausted its administrative remedies, there is no cause of action for which relief can be granted and this claim must be dismissed. *See also Engel v. Hartford Ins. Co. of the Midwest*, 2011 WL 6131566, at *4 (D. Nev. 2011); *Brown v. State Farm Fire & Cas. Co.*, 2011 WL 2295162, at *2 (D. Nev. 2011).

### 4.  Fraud and Concealment

First National alleges in its fourth cause of action that Progressive fraudulently stated that First National could only receive the benefit of the D&O Policy if a lawsuit against the bank was filed. (First Am. Compl. (#22) at 13-16). First National also claims that Progressive engaged in fraud because Elkins misrepresented in his April 4, 2011 letter that the entire Bond was not payable due to a "material misrepresentation" made on First National's renewal application.[2] (*Id.* at 15).

Under Nevada law, a claim of fraudulent misrepresentation requires the plaintiff to establish each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant's basis for making the representation was insufficient); (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). Pursuant to Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." To satisfy this standard, a plaintiff must plead "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' " *Swartz v. KPMG LLP*, 476 F.3d 756, 764

---

[2] Progressive contends that First National's claims for fraud and negligence are barred by the economic loss doctrine. (Mot. to Dismiss & Strike (#23) at 10-11). However, the doctrine does not apply to intentional torts, such as fraud. *Terracon Consultants Western, Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) (interpreting Nevada law and holding that claims for fraud and conversion are not barred by the economic loss doctrine). An exception to the economic loss doctrine also exists for negligent misrepresentation claims. *Terracon*, 206 P.3d at 87. As the majority of First National's claims for negligence are in actuality claims of negligent misrepresentation, the economic loss doctrine would not apply to these claims.

(9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

First National first alleges that Elkins misrepresented to Gianoli and Graber of First National on September 28, 2010 that benefits would not be paid under the D&O Policy unless a lawsuit was filed against the bank as a result of Marich's wrongful conduct. (First Am. Compl. (#22) at 11-12). Elkins again made these same representations to Graber on May 13, 2010 and in May 2011, and to Gianoli again sometime in September 2010. (*Id.* at 12). First National alleges that these statements were false because the D&O Policy defines a claim as "a written or oral demand for monetary damages or non-monetary relief" in addition to a civil or criminal proceeding. (D&O Policy (#23-3) at 7).

Although First National has alleged false representations were made, First National has failed to properly plead that it relied on these misrepresentations and suffered damages from such reliance. First National has failed to identify a single action taken or that it refrained from taking due to the misrepresentations. First National has also failed to identify any damages it suffered by relying on the misrepresentations. Accordingly, the first amended complaint fails to sufficiently plead a claim of fraud based on the alleged fraudulent statements.

First National also claims that Progressive engaged in fraud because Elkins misrepresented in his April 4, 2011 letter that the entire Bond was not payable due to a "material misrepresentation" made on First National's renewal application. (First Am. Compl. (#22) at 15). The first amended complaint however fails to identify the purported "material misrepresentation" which disqualified First National from receiving the full value of the Bond or describe how this assertion was in fact false. First National has not alleged that Progressive knew or should have known that they had no right to deny partial payment of the Bond based on the alleged misrepresentation. Finally, First National has failed to plead how it relied on this misrepresentation and was damaged thereby. First National has consequently failed to sufficiently state a claim for fraud.

**5.    Negligence**

In First National's fifth and final cause of action, it alleges that Progressive was negligent because it: (1) misrepresented or concealed the true nature of the policies; (2)

11

created a false basis to delay and/or deny First National's claims; (3) misrepresented or concealed its motivation in denying or partially paying the claims; (4) implemented a training and incentive program to deprive First National of its contractual benefits; and (5) failed to comply with applicable laws for the adjustment of First National's claim. (First Am. Compl. (#22) at 16-17).

The first three allegations of negligence appear to allege claims of negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a representation that is false; (2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; (3) the representation was for the guidance of others in their business transactions; (4) the representation was justifiably relied upon; (5) that such reliance resulted in pecuniary loss to the relying party; and (6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F.Supp.2d 1246, 1262 (D. Nev. 2006). First National however has failed to state a claim for negligent misrepresentation because it has not sufficiently pled that it relied on any of the misrepresentations to its detriment. First National has not described any action taken or any action it refrained from taking in reliance on the statements, nor has it identified any pecuniary loss suffered by relying on the statements. Accordingly, First National has failed to state a claim for negligent misrepresentation.

As for the allegation that Progressive was negligent because it implemented a training and incentive program to deprive First National of its contractual benefits, First National has provided absolutely no factual support for this claim. The first amended complaint is completely devoid of any allegations that Progressive's training program was improperly conducted or that any incentive program was in place which encouraged employees to deprive others of contractual benefits. As First National has failed to offer any facts from which the Court may draw the reasonable inference that Progressive is liable for the misconduct alleged, this claim should be dismissed.

First National's final allegation that Progressive was negligent because it failed to

comply with applicable laws for the adjustment of First National's claim should also be dismissed. This claim is duplicative of First National's claim for violation of the Nevada Unfair Claims Settlement Practices Act. First National has already alleged in count three that Progressive violated the Unfair Claims Settlement Practices Act. (First Am. Compl. (#22) at 10-13). By alleging that Progressive was negligent because it violated the Unfair Claims Settlement Practices Act, First National is simply attempting to recast a claim for a statutory violation as a negligence claim. As this claim is merely cloaked as a negligence claim but is in substance a duplicative claim for violation of the Unfair Settlement Practices Act, this claim shall be dismissed.

**C.     Motion to Strike Certain Relief Requested**

Progressive also seeks to strike First National's request for punitive damages because First National has failed to plead sufficient facts demonstrating such relief is warranted. (Mot. to Dismiss & Strike (#23) at 15-16). Nevada law authorizes an award of punitive damages "for the breach of an obligation not arising from contract, where . . . the defendant has been guilty of oppression, fraud or malice, express or implied." NEV. REV. STAT. § 42.005(1). Oppression is defined as conduct that subjects a person to cruel and unjust hardship with conscious disregard for the rights of the person. *Id.* § 42.001(4). Malice is defined as "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." *Id.* § 42.001(3). A claim for punitive damages requires that the defendant acted with a culpable state of mind and that the conduct exceed mere recklessness or gross negligence. *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

First National has not sufficiently pled that Progressive was guilty of oppression, fraud, or malice to support a claim for punitive damages. First National failed to allege any facts indicating that Progressive acted fraudulently or consciously disregarded the rights of or acted with the intent of injuring First National. The first amended complaint merely recites the elements of a claim for punitive damages by alleging Progressive acted "fraudulently, oppressively, and with conscious disregard for the rights of Plaintiff." (First Am. Compl. (#22)

13

at 13). Yet this formulaic recitation of the elements for punitive relief devoid of further factual enhancement is insufficient. *Iqbal*, 556 U.S. at 678. Although the first amended complaint does allege that Progressive delayed in investigating the matter and did not pay the full amount due under the Bond, First National has not pled facts that would suggest these actions were taken with a culpable state of mind exceeding recklessness or gross negligence. Therefore, First National has failed to sufficiently allege that punitive damages are warranted here and that the motion to strike certain relief requested shall be granted.

## MOTION TO STRIKE NEW DEFENSES AND LEAVE TO AMEND (#30)

**A.     Motion to Strike New Defenses**

First National has also filed a motion to strike certain defenses put forth by Progressive in its motion to dismiss. First National argues that Progressive is attempting to assert new defenses and justifications for not fully paying under the Bond or the D&O Policy and that it may not offer these new defenses under the "mend the hold" doctrine. (Mot. to Strike & Amend (#30) at 10-15). The "mend the hold" doctrine has never been adopted in Nevada and has not even been alluded to by the Ninth Circuit in over sixty years. The doctrine was first developed by the United States Supreme Court in *Ohio & Mississippi Railway Co. v. McCarthy*, in which the Court held "[w]here a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration." 96 U.S. 258, 267-68 (1877). Only a handful of states apply the doctrine and most courts considering the doctrine in recent years have held that it only applies when the offending party changes the initial reason for not performing a contract to a completely different reason in the middle of litigation. *See, e.g., Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012); *Burlington Ins. Co., v. PMI America, Inc.*, - - - F.Supp.2d - - - -, 2012 WL 995294, at \*\*15-16 (S.D. Ohio Mar. 23, 2012); *Liberty Mut. Ins. Co. v. American Home Assurance Co.*, 858 N.E.2d 530, 539 (Ill. App. Ct. 2006); *see also Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362-65 (7th Cir. 1990) (providing background on the "mend the hold" doctrine). The doctrine accordingly does not prohibit a party from adding a defense upon being sued or confine him to a defense

14

asserted before the suit was initiated. *See Ryerson Inc.*, 676 F.3d at 614. In addition, the doctrine generally does not apply "in the absence of detriment to the party seeking its application, unfair surprise, or arbitrariness." *Grinnell Mut. Reinsurance Co. v. LaForge*, 863 N.E.2d 1132, 1141 (Ill. App. Ct. 2006).

As an initial matter, it is unclear whether Nevada would even accept the "mend the hold" doctrine as it has never been discussed in Nevada case law.[3] Yet even if the doctrine was accepted by Nevada, it would not apply here. First, Progressive has not asserted a new defense in the middle of litigation. Progressive stated its reasons for denying coverage under the D&O Policy in its motion to dismiss—the initial pleading filed by Progressive in this Court—and has not changed its defense since the time of that filing. Second, First National has not shown that it would be prejudiced in any way by the assertion of the new defenses and any such prejudice is unlikely as this suit is still in its early stages. Finally, in the Elkins letter explaining why coverage under the D&O Policy was denied, Defendants expressly reserved all rights to raise additional defenses, and thus First National was on notice that additional policy defenses may be raised by Progressive. *Gary G. Day Constr. Co., Inc. v. Clarendon America Ins. Co.*, 459 F.Supp.2d 1039, 1050 (D. Nev. 2006) (holding equitable estoppel did not prohibit new defenses from being presented by an insurance company where it had included a reservation of rights in its denial letter). Accordingly, even if Nevada law did accept the "mend the hold" doctrine, the doctrine would not bar the defenses asserted here.

First National also attempts to prohibit Progressive's defenses on the basis of waiver and estoppel. Yet this Court has held that Nevada law "does not allow a litigant to use waiver to extend the coverage or scope of an insurance policy to include claims expressly excluded from the contract" absent evidence of misconduct, such as an "sandbagging," failing to investigate a claim, or where the insured relied on the insurer's misrepresentation to her detriment. *Prime Ins. Syndicate, Inc. v. Damaso*, 471 F.Supp.2d 1087, 1098-99 (D. Nev.

---

[3] It appears from the case law that Nevada is more likely to address changes to defenses regarding insurance policies under theories of waiver and estoppel, which are discussed below.

15

2007). First National is essentially arguing that because Progressive did not originally assert certain defenses limiting the scope of the policy that they have waived those exclusions, which has the effect of expanding the scope of the policy. Nevada law does not allow such a result. *See id.* The motion to strike new defenses shall be denied.[4]

**B.     Motion for Leave to File Second Amended Complaint**

First National has also requested leave to file a second amended complaint. Under Fed. R. Civ. P. 15(a), the court should freely give leave to amend. However, leave to amend need not be granted when it would result in undue delay, the request was made in bad faith, it would prejudice the opposing party, or amendment would be futile. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). A motion to amend a complaint is futile where the motion offers no new set of facts or legal theory, or fails to state a cognizable claim. *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009); *see also Miller v. Skogg*, 2011 WL 383948, at *4 (D. Nev. 2011) (denying plaintiff's motion to amend as futile for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)).

The second amended complaint contains the same five causes of action contained in the original complaint, but merely adds the allegations that John Gianoli was negligent by failing to act on Marich's fraud by not causing cross training, accounting, and auditing to occur which would have prevented the fraud. (Second Am. Compl. (#30-19) at 7). The second amended complaint also alleges that a claim was made against Gianoli under the D&O Policy by one or more shareholders of First National. (*Id.*).

In alleging Gianoli was negligent by failing to monitor and prevent the criminal conduct of Marich, First National is apparently attempting to avoid the Fraud/Violation of Law Exclusion which was fatal to its breach of contract claim in its first amended complaint. However, the exclusion clearly states that Progressive "shall not be liable to make any payment for Loss, other than Defense Costs, in connection with any Claim *arising out of* or *in any way involving*

---

[4] Even though the Court denies the motion to strike new defenses, it is not excluding evidence of changed defenses on the fraud, misrepresentation, and statutory claims in handling causes of action.

any fraudulent, dishonest or criminal act." (D&O Policy (#23-3) at 12) (emphasis added). Although Gianoli may have been negligent in monitoring Marich, that does not change the fact that the underlying cause of the loss was a fraudulent and criminal act. Because the loss arose out of a fraudulent and criminal act, the Fraud/Violation of Law Exclusion still applies.[5] Furthermore, allowing First National to recast the loss suffered from fraud as a claim of negligence against the supervisor of the criminal actor would effectively eliminate the exclusion altogether because whenever an employee commits a fraudulent/criminal act, allegations framed in negligence can always be made against the employee's supervisor. Accordingly, First National's attempt to amend its first amended complaint to collect under the D&O Policy through Gianoli's negligence fails.

First National also attempts to amend its complaint by alleging that shareholders have made a claim against Gianoli under the D&O Policy. (Second Am. Compl. (#30-19) at 7). By doing so, First National is attempting to obtain coverage under the D&O Policy's insured persons liability coverage. The clause for insured persons liability coverage states that Progressive "will pay on behalf of the Insured Persons, Loss resulting from Claims first made during the Policy Period or the Discovery Period against the Insured Persons for which the Insured Persons are legally obligated to pay for Wrongful Acts, except for Loss the Company pays as indemnification." (D&O Policy (#23-3) at 5). The Court grants First National leave to amend to allege Gianoli's liability as a basis for the indemnification claims. As such, the motion for leave to file a second amended complaint is granted in part and denied in part.

---

[5] First National contends that Marich's fraudulent and criminal conduct cannot be imputed to Gianoli under the D&O Policy because the Severability of Exclusions Clause in the policy provides that "no Wrongful Act . . . by any Insured Person will be imputed to any other Insured Person." (D&O Policy (#23-3) at 21). Yet the term "Wrongful Act" is a defined term which nowhere appears in the Fraud/Violation of Law Exclusion. The Fraud/Violation of Law Exclusion only excludes claims for losses suffered through fraudulent, dishonest or criminal acts—not "Wrongful Acts" as defined. (*Id.* at 12). The actions addressed in the Fraud/Violation of Law Exclusion are therefore not "Wrongful Acts," but rather separate and distinct conduct not applicable to the term. As the actions prohibited by the Fraud/Violation of Law Exclusion are not "Wrongful Acts," the Severability of Exclusions Clause does not require that the fraudulent acts of Marich be severable from the negligent actions of Gianoli.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the motion to dismiss and to strike certain relief requested (#23) is **GRANTED IN PART AND DENIED IN PART** as follows: the motion to dismiss is granted with respect to the claims for breach of the D&O Policy (contained in count one), violations of Chapter 686A of the Nevada Administrative Code (contained in count three), fraud and concealment (count four), and negligence (count five), without leave to amend, and denied with respect to the claims of breach of the Bond (contained in count one), breach of the covenant of good faith and fair dealing (count two), and violation of Nevada's Unfair Claims Settlement Practices Act, NRS §§ 686A.310(1)(a)-(e), (contained in count three). The request to strike certain relief is granted.

IT IS FURTHER ORDERED that the motion to strike certain new defenses raised and for leave to file second amended complaint raised (#30) is **GRANTED IN PART AND DENIED IN PART**. The motion to strike certain defenses is denied. The motion to amend is granted in part.

DATED: This 26TH day of November, 2012.

_____
United States District Judge